IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA WRIGHT                    :        CIVIL ACTION
                                 :
        v.                       :
                                 :
LITTON LOAN SERVICING LP         :        NO. 05-02611-JF

ADJUDICATION

Fullam, Sr. J.                                         April 4, 2006

      This is an action by a homeowner against a mortgage servicing company for alleged violations of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2605, the Fair Debt Collection Practices Act, 41 Pa. Stat. §§ 101-605, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201 *et seq.*  There is remarkably little disagreement as to the underlying facts, which can be summarized as follows:

      On November 10, 1998, plaintiff re-financed her home, and executed a mortgage to Sunset Mortgage Company in the amount of $33,600.  The initial rate of interest was 13.875% per annum, but it was an adjustable rate mortgage which permitted adjustments to the interest rate at six-month intervals, based upon a specified index.  The documents provided that the interest rate could never be less than 13.875%, and could be increased to as much as 20.375%.  The monthly payments were stated to be $343.74 per month.  Shortly after the mortgage was executed,

Sunset assigned it to Ocwen Federal Bank, F.S.B., on November 13, 1998.

Unable to keep up her mortgage payments, plaintiff sought protection under Chapter 13 of the Bankruptcy Code, on February 16, 2000.  (E.D. Pa. Bankr. Court, 00-12022) Promptly thereafter, on June 13, 2000, plaintiff filed suit in the Philadelphia Court of Common Pleas to rescind the mortgage, alleging a vast array of statutory violations on the part of the mortgagee.  That suit was settled on December 18, 2000, when the parties executed, and the Bankruptcy Court approved, a settlement agreement.

Under the terms of the settlement, the parties executed a modification of the original mortgage, which included the following provisions: (1) the principal amount of the mortgage was stated to be $25,894; (2) the rate of interest was fixed at 8%; (3) the mortgage was to be amortized at the rate of $190.66 per month for a 30-year period; and (4) Ocwen paid plaintiff's counsel fees.

All went well for a couple of years, but, on April 29, 2002, the servicing of the mortgage was transferred to the defendant, Litton Loan Servicing, LP, on behalf of the then-owner of the mortgage, Wells Fargo Bank of Minnesota, acting as trustee for a group of investors.  Apparently, Ocwen was not made aware of the fact that the original mortgage had been modified.  For

the next 29 months, from April 29, 2002 through September 2004, the defendant did not adjust its records to reflect the modification of the mortgage, and as a result continued to demand monthly payments ranging from $343 to $666 or more.  During that period, plaintiff received numerous letters, account statements and telephone calls from the defendant seeking to enforce the mortgage according to its original terms.

On May 21, 2002, plaintiff's counsel faxed a letter to the defendant pointing out the terms of the loan modification, and enclosing another copy of the modification agreement, and requesting the defendant to correct the account records.  Although those documents were received on or about May 21, 2002, the defendant did not correct its records until mid-September 2004.  On October 25, 2002, defendant mailed an "adjustable rate mortgage loan adjustment notice" which claimed that the principal balance of the mortgage was $33,126.86, payable (with interest at 11.875%) at the rate of $343.74 per month.  Similar letters were mailed by defendant to plaintiff on April 30, 2003, October 24, 2003, and April 26, 2004 – all specifying that the mortgage bore an adjustable interest rate as specified in the original note, instead of the fixed 8% rate called for by the 2000 modification.  Similar monthly billing statements were sent on April 14, 2004, May 24, 2004, June 14, 2004, July 15, 2004, August 13, 2004 and September 15, 2004.

In addition to various telephone complaints, plaintiff wrote to the defendant on August 10, 2004, disputing the accuracy of their records and requesting that the appropriate adjustments be made.  Defendant acknowledged receipt of the plaintiff's request on August 18, 2004 and, on September 3 and September 16, 2004, defendant wrote to plaintiff asserting that the records had been updated to reflect the changes made in 2000.  The September 16 letter stated that plaintiff's monthly payment was in fact $190.66, and that the next payment would be due on October 1, 2004.  Nevertheless, defendant then wrote plaintiff a letter dated September 22, 2004, asserting that there was a deficit in her escrow account in the amount of $5,285.17, and stating that, as of November 1, 2004, her monthly mortgage payment would increase to $455.80.

Actually, the correct amount of the escrow account deficit (assuming the accuracy of all of the insurance and tax payments claimed to have been made by the defendant) should have been $4,328.94, rather than the $5,285.17 claimed.  This problem was exacerbated when, in the September monthly statement which specified that $190.66 would be due on October 1, defendant also asserted (for the first time) that plaintiff owed "other fees due" in the sum of $40,927.12.

On January 5, 2005, defendant sent to plaintiff two different written notices: one demanded that she immediately pay

4

three months of overdue monthly payments, totaling $2,127.96; the other notice advised that defendant intended to accelerate the mortgage so that the entire principal would be due immediately, and included a threat of foreclosure.

On January 13, 2005, plaintiff's counsel wrote to the defendant, again disputing the amounts claimed by defendant, and seeking an explanation.  Remarkably, defendant did not reply to that letter directly.  Instead, defendant wrote to plaintiff in person, stating that her lawyer was not authorized to represent her, hence they were corresponding directly with her.  The letter included a totally incomprehensible purported explanation of the discrepancies, and stated that the monthly payment had been adjusted to $669.96 as of October 1, 2004.  Defendant did not even send a copy of that letter to plaintiff's counsel.

On February 4, 2005, defendant sent plaintiff a notice of default, specifying that the amount needed to cure the default was $2,029.47.  A week later, on February 11, 2005, defendant sent plaintiff a monthly statement to the effect that, as of March 1, 2005, her delinquency was $2,696.43.

Defendant later sent plaintiff a notice to the effect that, as of May 14, 2005, the amount necessary to reinstate the mortgage would be $47,103.60.  Included in this sum were the "previous service expenses" of $40,575.12 (still not explained), a BPO fee of $400, and an "escrow shortage" of $4,281.44.

Finally, on June 22, 2005, defendant commenced an action in mortgage foreclosure in the Philadelphia Court of Common Pleas.  The foreclosure complaint stated that the interest rate on the mortgage was adjustable and might increase, and that, among other things, plaintiff owed an escrow overdraft in the amount of $5,313.14.  In the meantime, plaintiff had filed this action, on June 7, 2005.

In addition to the foregoing chronology, I find the following facts:

Plaintiff believed that she was required to pay the real estate taxes on her residence and, for the most part, did so.  However, her tax bills were not always paid on a current basis.  She was unaware of the assignment of responsibility for paying insurance premiums.  Apparently, she did not maintain insurance on the property.  Thus, throughout the entire period in question, it is probable that there was a deficit in some amount, in the escrow fund.  The evidence does not establish, however, the correct amount of any escrow deficit, or the actual basis for any of the various amounts claimed by defendant at various times.  The evidence does make clear that plaintiff was never given adequate, complete, and understandable explanations for defendant's claims.

The defendant has requested that I find as a fact that, during the period when plaintiff was in Chapter 13 bankruptcy,

Ocwen did not seek relief from the bankruptcy stay, and did not take any action to collect its debt.  Although the relevance of this finding is not immediately apparent, I am happy to include it among my factual findings.  Defendant has also requested that I find that the "monthly mortgage statements dated 9/15/04 and 12/15/04 and letters advising of adjustments in the interest rate were automatically generated."  I also adopt that finding, since it appears that defendant's operations were indeed computerized.  In fact, defendant's sole witness at trial, whose job title is "litigation processor" could provide no information other than what was reflected in computer printouts.  Unfortunately, these computerized records were of extremely dubious probative value: most of the entries were redacted on grounds of "attorney-client privilege," and the remaining entries were, for the most part, not self-explanatory.

   Finally, I find that the plaintiff has suffered a great deal of emotional distress, anxiety, fear of losing her home, loss of sleep, and frustration as a result of the defendant's conduct, since at least May of 2002.

## CONCLUSIONS OF LAW

   The defendant Litton is a servicer of a federally-related mortgage loan within the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605.

The May 21, 2002 letter to the defendant was a "qualified written request" within the meaning of 12 U.S.C. § 2605(e)(1)(B), and the defendant failed to make appropriate corrections within 60 days, and failed to notify plaintiff of any corrections, in violation of 12 U.S.C. § 2605(e)(2).

Each of plaintiff's and her attorney's later written requests for information about her account and for correction of the mistakes therein constituted a "qualified written request," within the meaning of RESPA. Defendant's contention that a communication is not a "qualified written request" unless it contains the number of the account is incorrect. The statute only requires that the inquiry be sufficient to identify the account. Adequate information was supplied.

Defendant exhibited a pattern or practice of noncompliance with the servicing provisions of RESPA, in view of the numerous violations established by the evidence. Plaintiff is entitled to recover for "actual damages" plus statutory damages of $1,000. 12 U.S.C. § 2605(f)(1).

I conclude that "actual damages" includes damages for non-economic losses, such as pain, suffering and emotional distress. In my view, the weight of authority, and the better view, supports that interpretation of the statute. I adopt the reasoning of Ploog v. HomeSide Lending, Inc., 209 F. Supp.2d 863 (N.D. Ill. 2002), Johnstone v. Bank of America, N.A., 173 F.

Supp.2d 809 (N.D. Ill. 2001), and Rawlings v. Dovenmuehle Mortg., Inc., 64 F. Supp.2d 1156 (M.D. Al. 1999).  The only decision to the contrary, Katz v. Dime Sav. Bank, F.S.B., 992 F. Supp. 250 (W.D.N.Y. 1997), was a *pro se* case, and appears to have been decided primarily under state contract law.

I conclude that a fair and reasonable amount to be awarded plaintiff for non-pecuniary damages is $25,000.  Although a more generous award would perhaps be justified, this defendant was not the sole cause of plaintiff's suffering.

The defendant also violated the Pennsylvania statute, Act 6 of 1974, 41 Pa. Stat. §§ 101-604, in ways which do not duplicate the federal violations.  Defendant provided inaccurate information as to the amount required to cure the alleged default, as required by § 403, and demanded amounts not properly due, under § 404 (including, at least, the $400 "BPO" fee, the $70 inspection fee, and $319.18 in late charges which were the responsibility of the defendant for having failed to implement the loan modification).  Under the statute, plaintiff is entitled to treble damages, totaling $2,367.54.

I conclude that plaintiff is not entitled to damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201 *et seq.*, since that would represent a duplication of recoveries.  Plaintiff is entitled to equitable relief, requiring the defendant to correct its records.

9

Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, plaintiff is entitled to recover statutory damages in the amount of $100 for each of the 20 written communications which constituted a separate violation of the statute (four rate adjustment letters dated October 25, 2002, April 30, 2003, October 24, 2003 and April 26, 2004; six monthly statements mailed in 2004; and ten letters and notices (Exhibits 11-13, 15-17, 19-22)). The total damages under this statute amount to $2,000.

In my view, the undisputed facts would warrant an award of punitive damages, if authorized by statute. Inflating plaintiff's account by including the $40,575.12 for "other expenses" was particularly egregious. The only attempted explanation of this item is that it represents attorney's fees incurred by the Ocwen firm in the lawsuit which was settled in 2000 – obviously not the responsibility of the plaintiff. I conclude, however, that punitive damages are not authorized by any of the pertinent statutes. But plaintiff is entitled to recover her attorney's fees.

The damages to which plaintiff is entitled are: $1,000 under FDCPA, $2,000 for the 20 violations of the Pennsylvania Debt Collections statute, $1,000 under RESPA, $2,367.54 under the Pennsylvania Act 6 of 1974, for a total of statutory damages in the amount of $6,367.54, plus $25,000 for emotional distress and

related non-pecuniary losses, for a total damage award of $31,367.54.  In addition, plaintiff is entitled to recover attorney's fees, in an amount to be determined.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREA WRIGHT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LITTON LOAN SERVICING LP | : | NO. 05-02611-JF |

ORDER

AND NOW, this 4th day of April 2006, IT IS ORDERED:

1. JUDGMENT is ENTERED in favor of the plaintiff, Andrea Wright, and against the defendant, Litton Loan Servicing, LP in the sum of $31,367.54.

2. Plaintiff may submit an application for counsel fees within 10 days, and defendant may respond within 5 days thereafter.

3. Defendant shall, within 30 days, provide plaintiff and her counsel with an accurate statement of her mortgage account, which reflects the 2000 modification agreement as of January 2001, which does not include any late charges or any other fee or charge of any kind, except for the agreed reduced principal, interest from January 2001, and actual payments of real estate taxes and insurance made by the defendant since January 2001, less all amounts paid by plaintiff from January 1, 2001 to date.

BY THE COURT:

/s/ John P. Fullam
John P. Fullam, Sr. J.